Opinión disidente emitida por la
Juez Asociada Señora Rodríguez Rodríguez.
Disiento del curso trazado en la sentencia que hoy dicta una mayoría de este Tribunal por entender que el pago de *77 los beneficios marginales y haberes dejados de percibir concedidos como remedio deben ser equivalentes a un periodo de cinco años, que es el término que se proveía para que los empleados permanecieran en el registro de personas elegibles, y no un término desde la cesantía ilegal hasta la venta del último centro u hospital del Departamento de Salud. Determinación esta, a todas luces, arbitraria. Veamos.
I
Los hechos que dan lugar a la reclamación de epígrafe se resumen adecuadamente en la sentencia del Tribunal por lo que consideramos innecesario reproducirlos. Pasemos entonces a la discusión del derecho aplicable a la controversia ante nuestra consideración.
II
En 1993, la Asamblea Legislativa aprobó la Ley de la Administración de Seguros de Salud de Puerto Rico, Ley Núm. 72 de 7 de septiembre de 1993 (24 LPRAsec. 7001 et seq.) (Ley Núm. 72), para reformar los servicios de salud que hasta entonces se ofrecían en el gobierno del Estado Libre Asociado.(1) Mediante la Ley Núm. 72, se delegó en la Administración de Seguros de Salud de Puerto Rico, la res *78 ponsabilidad de “implantar, administrar y negociar, mediante contratos con aseguradores, y/u organizaciones de Servicios de Salud [...] un sistema de seguros de salud que eventualmente le brinde a todos los residentes de la Isla acceso a cuidados médico-hospitalarios de calidad, independientemente de la condición económica y capacidad de pago de quien los requiera”. 24 LPRA see. 7001.
Para reformar adecuadamente los servicios de salud se aprobó la Ley para Reglamentar el Proceso de Privatización de las Instalaciones de Salud Gubernamentales, Ley Núm. 190 de 5 de septiembre de 1996 (24 LPRA ant. see. 3301 et seq.) (Ley Núm. 190).(2) En esencia, la Ley Núm. 190 buscaba salvaguardar los intereses gubernamentales en las instalaciones que el Gobierno cediera, entre otros, en arrendamiento a entidades privadas. Exposición de Motivos de la Ley Núm. 190 de 5 de septiembre de 1996 (1996 (Parte 1) Leyes de Puerto Rico 1078).
El Art. 19 de la Ley Núm. 190 regulaba lo que habría de ocurrir con los empleados del Departamento de Salud que laboraran en una institución de salud al momento de su privatización y no pasaran a trabajar con el privatizador. En particular, disponía que los derechos de esos empleados iban a ser garantizados por la Ley de Personal del Servicio Público de Puerto Rico, Ley Núm. 5 de 14 de octubre de 1975 (3 LPRA see. 1301 et seq.) (Ley Núm. 5).(3) A su vez, ordenaba que se estableciera un registro especial de los empleados que no pasaran a formar parte de la plantilla de trabajo del privatizador de suerte que pudieran ser reubicados en otras agencias gubernamentales o en la empresa privada.(4) El Art. 4.6(6) de la Ley Núm. 5 disponía que:
*79 (6) Se podrán decretar cesantías en el servicio sin que esto se entienda como destitución, en los siguientes casos:
(a) Debido a la eliminación de puestos por falta de trabajo o de fondos,
En la situación descrita en la cláusula (a) de este inciso la separación del servicio se hará según se establezca mediante reglamento al respecto en el que se tome en consideración entre otros factores el status de los empleados y su antigüedad y el tiempo en servicio. (Énfasis suplido). 3 LPRA see. 1336.
Para instrumentar el mandato contenido en el artículo 4.6(6) de la Ley Núm. 5 se aprobó el Reglamento Núm. 2186, conocido como el Reglamento de Personal: Áreas Esenciales al Principio de Mérito, Reglamento Núm. 2186 de 1 de octubre de 1976. En este se reguló el proceso que se utilizaría cuando se decretaran cesantías. En específico, en *80 su Art. 9.3 el Reglamento disponía que se podía separar del servicio a cualquier empleado, sin que se entendiera como una destitución, cuando se eliminaran puestos por falta de trabajo o fondos. Art. 9.3, Reg. Núm. 2186 de 1 de octubre de 1976. En ese caso, la autoridad nominadora tenía que establecer un método para decretar las cesantías y el método debía ser comunicado a los empleados. Reg. Núm. 2186 de 1 de octubre de 1976, Art. 9.3. Asimismo, el Art. 9.3 disponía el orden de prelación que la autoridad nominadora debía aplicar al decretar las cesantías en cada grupo de empleados, a saber: entre los transitorios, probatorios y regulares. Art. 9.3 del Reg. Núm. 2186 de 1 de octubre de 1976. Se indicaba que la autoridad nominadora debía primero separar a los empleados transitorios, luego a los empleados probatorios y por último a los empleados regulares.(5) Reg. Núm. 2186 de 1 de octubre de 1976, Art. 9.3.
Por otro lado y relacionado con los derechos de los empleados cesanteados, en el Art. 5.18 de la Ley Núm. 5 se disponía que:
Las siguientes disposiciones regirán el reingreso de los empleados al servicio público:
(1) Los empleados regulares que renuncien a sus puestos o sean cesanteados por eliminación de puestos, o por incapacidad al recuperar de la misma, tendrán derecho a que sus nombres se incluyan en el registro de elegibles correspondientes a las clases de puestos que ocupaban con carácter regular u otras similares que envuelvan el mismo nivel de trabajo.
(4) A las personas con derecho a reingreso y que deseen ejercerlo, se les aplicará la legislación vigente a la fecha de la radicación de la solicitud.
(5) Las condiciones, el orden y la forma en que los nombres *81 han de colocarse en el registro será establecida por las normas que se promulguen al efecto.
(6) La solicitud a reingreso deberá radicarse en cualquier tiempo durante el período de cinco (5) años siguientes a la fecha de separación; [disponiéndose, que la anterior no le será de aplicación a la situación prevista en el inciso (2) de esta sección, en cuyo caso se ejercerá el derecho en cualquier momento.
(7) Los nombres de las personas incluidas en los registros de elegibles correspondientes figurarán en los mismos por un término de cinco (5) años a partir de la fecha de separación a excepción de la situación prevista en el inciso (2) de esta sección. (Énfasis suplido). 3 LPRA see. 1358.
Como se puede observar, el Art. 5.18 (3 LPRA sec. 1358) le concedía a los empleados cesanteados por eliminación de puestos el derecho a ser incluidos en un registro de personas elegibles, correspondientes a las clases de puestos que ocupaban por un término de cinco años a partir de la fecha de separación del empleo. Este era el remedio que expresamente les concedía la ley a los empleados cesanteados.
Sin embargo, según el Art. 7.14 de la Ley Núm. 5 (3 LPRA see. 1394), esos empleados también podían acudir a la Junta de Apelaciones del Sistema de Administración de Personal.(6) Particularmente, el Art. 7.14 disponía que:
Con sujeción a las excepciones que se establecerán más adelante en esta ley, se podrá apelar de las acciones o decisiones de la Oficina Central, de los Administradores Individuales, y de las autoridades nominadoras, en los casos y por las personas que se especifican a continuación:
(1) En casos de destitución o suspensión de empleo y sueldo por un empleado de carrera que esté dentro del Sistema de Personal, o cuando alegue que una acción o decisión que le afecta viola cualquier derecho que se le conceda a virtud de las disposiciones de esta ley, del reglamento que se apruebe para instrumentar esta ley, o de los reglamentos adoptados por los Administradores Individuales para dar cumplimiento a esta ley. Las acciones que interpongan los empleados y que estén *82 relacionadas con las áreas esenciales al principio de mérito, según señaladas en la see. 1331 del título 3, serán vistas en primera instancia por la Junta. (Énfasis suplido). 3 LPRA see. 1394 (ed. 2000).
Con respecto a los remedios que podía conceder la Junta de Apelaciones del Sistema de Administración de Personal en los casos que tuviera jurisdicción según la ley, el Art. 7.17 de la Ley Núm. 5 establecía que:
(1) En los casos en que la Junta resuelva a favor del querellante, dictará las órdenes remediales pertinentes.
(2) En casos de destitución, si la decisión de la Junta es favorable al empleado, ésta deberá ordenar su restitución a su puesto, o a un puesto similar. Asimismo deberá ordenar el pago total o parcial de los salarios dejados de percibir por éste desde la fecha de la efectividad de la destitución, y la concesión de todos los beneficios marginales a que éste hubiese tenido derecho.
(3) En casos de suspensión de empleo y sueldo, si la decisión de la Junta es favorable al empleado, deberá ordenar el pago total o parcial de los salarios dejados de percibir por éste y de todos los beneficios marginales a que éste hubiese tenido derecho durante el período de suspensión. (Énfasis suplido). 3 LPRA see. 1397 (ed. 2000).
Se desprende del Art. 7.14 (3 LPRA ant. see. 1394) que los empleados que habían sido destituidos o suspendidos de empleo y sueldo, así como a los que la autoridad nominadora les había violado algún derecho concedido por ley o reglamento, tenían derecho a acudir a la Junta de Apelaciones del Sistema de Administración de Personal. Por otro lado, se desprende del Art. 7.17 (3 LPRA sec. 1397) que el legislador distinguió los remedios que debía conceder la Junta en casos de destitución o de suspensión de empleo y sueldo de los remedios en los otros casos. A saber, cuando no se tratara de una destitución o de una suspensión de empleo y sueldo, la Ley Núm. 5 le permitía a la Junta conceder los remedios que entendiera pertinentes. Adviértase que estamos obligados a interpretar de manera armoniosa las distintas disposiciones de una ley, y no aisladamente.
*83 HH 1—I HH
Expuesto el derecho aplicable, estoy conforme con la Sentencia del Tribunal en cuanto a la ilegalidad de las cesantías decretadas por el Departamento de Salud. De la prueba presentada no surge que el Departamento haya establecido el plan de cesantías requerido y que se lo haya comunicado a los empleados tal y como lo exigía el Art. 9.3 del Reglamento 2186. Reglamento Núm. 2186 de 1 de octubre de 1976. Además, según el testimonio del testigo que presentó el Departamento de Salud, al decretar las cesantías en cada uno de sus centros, el Departamento no tomó en consideración la antigüedad de los empleados.(7) A su vez, el Departamento no presentó evidencia que sustentara la creación del registro de personas elegibles. Evidentemente entonces, todo lo anterior en violación a lo dispuesto en la Ley Núm. 5 y en el Reglamento Núm. 2186 de 1 de octubre de 1976.
Debido a la ilegalidad de las cesantías, una mayoría de este Tribunal concede como remedio que el Departamento abone la paga atrasada que los empleados cesanteados dejaron de percibir, restando los haberes percibidos en otros trabajos durante ese periodo, y la concesión de todos los beneficios marginales a los que hubiesen tenido derecho “desde que ocurrió la cesantía ilegal de cada empleado hasta la fecha en que se vendió el último centro u hospital del Departamento”.(8) Disiento de este proceder. El proceso seguido por el Departamento de Salud para implantar la política pública de privatización de las facilidades de salud del Estado Libre Asociado fue ilegal y contrario a derecho al no ajustarse a lo exigido en la Ley Núm. 5 y en el Reglamento Núm. 2186 de 1 de octubre de 1976. Hoy, pasada más de una década, toca pagar por ese error. Considero que de acuerdo con el inciso (1) de la Sec. 7.17 de la Ley Núm. *84 5 (3 LPRA ant. see. 1397), el remedio concedido debe ser pago de los beneficios marginales y haberes dejados de percibir por un periodo de cinco años, equivalente al término que los empleados tenían derecho a permanecer en el registro de personas elegibles, según el Art. 5.18 de la Ley Núm. 5 (3 LPRA ant. see. 1358), por ser este remedio el provisto en ley.
IV
Por los fundamentos discutidos disiento. Procede la paga atrasada y los beneficios marginales concedidos solo por un periodo equivalente a cinco años.

 La implementación de la Ley Núm. 72 tuvo como consecuencia que el Gobierno abandonara su “función tradicional de proveedor de servicios, sobre todo para el sector médico-indigente de la población, para convertirse en agente fiscalizador, evaluador y regulador de los sistemas de salud y asumir el papel de promotor de la salud y procurador del paciente”. Exposición de Motivos de la Ley para Reglamentar el Proceso de Privatización de las Instalaciones de Salud Gubernamentales (1996 (Parte 1) Leyes de Puerto Rico 1078), Ley Núm. 190 de 5 de septiembre de 1996 (24 LPRA ant. see. 3301 et seq.). También le permitió al Gobierno arrendar o, de otro modo, transferir a entidades privadas las instalaciones de salud pública que habían estado operando para que estas instalaciones fueran operadas como empresas privadas. Id.

 Esta ley fue derogada por la Ley Núm. 3 de 1 de enero de 2003 (24 LPRA see. 3326 et seq.).

 Esta ley fue derogada por la Ley para la Administración de los Recursos Humanos en el Servicio Público del Estado Libre Asociado de Puerto Rico, Ley Núm. 184 de 3 de agosto de 2004 (3 LPRA see. 1461 et seq.).

 El Art. 19 de la Ley Núm. 190 de 5 de septiembre de 1996, el cual fue enmendado por la Ley Núm. 31 de 6 de julio de 1997, disponía lo siguiente:
*79 “El arrendamiento, subarrendamiento, venta, cesión, permuta o contratación mediante cualquier otro modelo de contratación que el Secretario, en unión con el Banco, determine conforme a la discreción que le confiere esta Ley, con relación a una o más instalaciones de salud gubernamentales a una entidad o intereses privados no establecerá relación de patrono y empleado entre el contratista y el Banco ni entre el contratista y el Departamento y así se establecerá en el contrato. En cuanto a los empleados regulares del Departamento que laboren en la instalación o instalaciones al momento de tal privatización, y que no pasen a ser empleados de la entidad contratante, el Departamento velará por el cumplimiento de las disposiciones de [la Ley Núm. 5 de 14 de octubre de 1975, según enmendada,] y las otras leyes y reglamentos aplicables. La entidad contratante no incurrirá en responsabilidad alguna con aquellos empleados del Departamento que no emplee.
“La Oficina de Gerencia y Presupuesto y la Oficina Central de Administración de Personal serán partícipes, junto al Secretario, de la coordinación necesaria a los efectos del proceso de reubicación y cesantías. Se creará un registro especial en dichas agencias para conceder preferencia a los empleados que no sean transferidos a las empresas adquirientes para su reubicación a través de los diferentes organismos gubernamentales y en la empresa privada. [...]
“Para lograr este propósito el Secretario, en unión con la Oficina de Gerencia y Presupuesto, nombrarán un Coordinador de Reubicación. Este funcionario establecerá las normas para el referimiento y selección de los candidatos a los diferentes organismos gubernamentales. También coordinará con la Administración de Fomento Comercial la extensión de los beneficios del Programa Vale Empleo y Vale Empleo Plus de forma preferencial a todos los empleados que no sean transferidos a las empresas adquirientes. El Departamento del Trabajo dará prioridad a los empleados cuyos nombres aparecen en dicho registro, en sus programas de empleo, reempleo y adiestramiento, tales como los adiestramientos profesionales por la Administración del Derecho al Trabajo y los del Negociado de Fomento al Trabajo”. Sec. 15 de la Ley Núm. 31-1997 (24 LPRA see. 3318 (ed. 2002)).

 Según el Art. 9.3 del Reglamento Núm. 2186, la autoridad nominadora, en cada grupo de empleados, tenía que tomar en consideración el desempeño de cada uno, de manera que los menos eficientes fueran cesanteados primero. Si había igualdad con respecto al desempeño de los empleados o no había suficiente información para determinar el desempeño, la autoridad nominadora tenía que tomar en consideración el tiempo en el servicio de cada uno, de manera que los empleados con menos tiempo en el servicio fueran cesanteados primero. Id.

 Esta Junta fue derogada por la Ley para la Administración de los Recursos Humanos en el Servicio Público del Estado Libre Asociado de Puerto Rico, Ley Núm. 184 de 3 de agosto de 2004 (3 LPRA see. 1461 et seq.).

 Apéndice de la Petición de certiorari, págs. 644-647 y 683-685.

 Sentencia del Tribunal, pág. 29.